UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KENTRELL WELCH,<br><br>　　Plaintiff<br><br>v.<br><br>AZZAM, et al.,<br><br>　　Defendants | Case No.: 3:22-cv-00565-MMD-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF Nos. 3, 6, 7, 18 |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Shortly after he filed his complaint, Plaintiff filed a motion for preliminary temporary restraining order (TRO) injunction. (ECF No. 3.) The court screened his complaint, and dismissed it with leave to amend. (ECF No. 4.) Plaintiff filed his amended complaint. (ECF No. 5.) Plaintiff then filed motions for a preliminary injunction and TRO. (ECF Nos. 6, 7.)[1] Plaintiff subsequently filed a motion to voluntarily withdraw ECF No. 3, and proceed with his request for relief in ECF Nos. 6 and 7. (ECF No. 18.) The court recommends that the motion to withdraw ECF No. 3 be granted, and the court will proceed only with an analysis of ECF Nos. 6 and 7.

After a thorough review, it is recommended that Plaintiff's motions for injunctive relief at ECF Nos. 6 and 7 be denied.

---

[1] The documents are identical but were docketed separately to reflect the different forms of relief sought (*i.e.*, TRO and preliminary injunction).

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (ECF No. 5.) The court screened Plaintiff's amended complaint and allowed him to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Hanf for allegedly failing to treat his H. Pylori bacterial infection. He was also allowed to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Nurses Stark and Ciciliano, Hicks, and Correctional Officer Featherly for allegedly delaying appointments with medical specialists about various of his medical conditions, including H. Pylori, rheumatoid arthritis, and hyperthyroidism/Grave's disease.

Finally, he was allowed to proceed with First Amendment retaliation claims against Nurse Stark and Correctional Officer Featherly. The retaliation claim against Stark is based on allegations that Stark intentionally fabricated Plaintiff's medical records to reflect that he refused to attend a prerequisite medical appointment so he could be transferred to have his specialist appointments because Plaintiff filed a grievance against Stark about a violation of his religious rights. The retaliation claim against Featherly is based on allegations that Featherly knowingly impeded Plaintiff's medical care by telling him he had a legal visit despite knowing it was an unnoticed outside specialist care trip because of a DOC 1564 Plaintiff issued against Featherly in June of 2022. (ECF No. 8.)

Plaintiff's motions seek an order that the Defendants send Plaintiff to three outside specialists that he claims were previously ordered and authorized: a gastrointestinal specialist for his H. Pylori bacterial infection; a rheumatologist as well as bone/joint doctor concerning his rheumatoid arthritis; and an endocrinologist for his hyperthyroidism/Grave's disease. He also

states that there are orders for probiotic drinks, a dermatology cream for facial sores, and essential vitamins that were never provided. In his reply brief, Plaintiff states that he is requesting treatment that he has been ordered to receive, including: Tapazole, Lac lotion, Miralax, probiotics, vitamin D3, Pepto Bismol, Flagyl, tramadol, fish oil, vitamin C, Os-Cal, thymine, B-complex, zinc, and magnesium.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public

interest. *Id.* at 20 (citations omitted).). The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation and quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240

F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

### III. DISCUSSION

**A. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiff was allowed to proceed in this action with a claim that he was denied treatment, including consultation with medical specialists related to his H. Pylori bacterial infection, rheumatoid arthritis, and hyperthyroidism/Grave's disease.

**B. Rheumatoid Arthritis**

Plaintiff was referred to for an orthopedic consult for shoes by C. Alley on January 22, 2022, due to rheumatoid arthritis pain. This was approved. (ECF No. 14-2 at 8.)

Plaintiff was transferred from Northern Nevada Correctional Center (NNCC) to Ely State Prison (ESP) on May 20, 2020, and rheumatoid arthritis was listed as one of his medical issues. (ECF No. 14-2 at 3)

Plaintiff provides a medical record from June 29, 2021, where he saw Gregory Martin, APRN. That record indicates that Plaintiff had a slow, antalgic gait and was using a cane for assistance with ambulation. He had difficulty climbing on to and off of the exam table. He had generalized pain that was aching, dull, throbbing and constant. He also had scattered rheumatoid arthritis nodules. APRN Martin noted that the plan was for Plaintiff to be seen in the chronic care clinic in one month for his rheumatoid arthritis, and he was ordered a cane for ambulation for 180 days, as well as shoe insoles. (ECF No. 6 at 11.)

Plaintiff was seen in the chronic care clinic for his rheumatoid arthritis on September 29, 2021, and was to follow up in one month. (ECF No. 14-2 at 30.) Diclofenac gel was renewed on March 31, 2022. (ECF No. 14-2 at 32.)

Plaintiff had a medical order for a cane for ambulation related to his rheumatoid arthritis on June 16, 2022. (ECF No. 14-2 at 11, 33.)

On October 10, 2022, Plaintiff was ordered Tylenol 650mg for his pain, but he refused this medication on October 13, 14, 15, 16, 17, and 18, 2022. (ECF No. 14-2 at 20, 22, 23, 24, 25, 26, 34.)

Plaintiff asks that Defendants be required to send him to a specialist for his rheumatoid arthritis. He claims this referral was previously ordered and authorized, but he does not present

any evidence reflecting an order for referral to a rheumatologist or other specialist concerning his rheumatoid arthritis. Therefore, it does not appear he is likely to succeed on his Eighth Amendment claim to the extent he alleges there was deliberate indifference by failing to send him to a rheumatology specialist.

Nor has Plaintiff demonstrated he will suffer irreparable harm in the absence of the requested relief. Plaintiff is being followed for his rheumatoid arthritis in the chronic care clinic. He has received various medications for his pain, some of which he has refused, and has been issued a cane for assistance with ambulation. He provides no evidence to support a claim of deliberate indifference with respect to his care for rheumatoid arthritis. Therefore, Plaintiff's request for an order that he be sent to a rheumatology specialist should be denied.

**C. Hyperthyroidism/Grave's Disease**

When Plaintiff was transferred to NNCC on September 5, 2019, it was noted he had hyperthyroidism. (ECF No. 14-2 at 2.)

He was referred for a thyroid ultrasound by C. Alley because he had nodules on the left lobe of the thyroid. This was authorized on September 26, 2019. (ECF No. 14-2 at 41.) When Plaintiff transferred to ESP on May 20, 2020, it was noted he had hyperthyroidism. (ECF No. 14-2 at 3.)

On April 27, 2021, APRN Martin requested a referral to endocrinology because of his increased goiter. It was noted he had started on Tapazole. The referral was authorized on May 12, 2021. (ECF No. 14-2 at 42.)

At his June 29, 2021 visit with APRN Martin, Plaintiff had a questionable small goiter, and reported fatigue. He had no heart palpitations, drying of the skin or unintentional weight

loss. The plan was for him to be seen at the chronic care clinic in one month for his hyperthyroidism. (ECF No. 6 at 11.)

On August 9, 2021, APRN Martin referred Plaintiff for a thyroid ultrasound because he could not be seen by the endocrinologist until this was completed. The thyroid ultrasound was authorized on August 18, 2021. (ECF No. 14-2 at 43.) Plaintiff was seen in the chronic care clinic for hyperthyroidism on September 29, 2021, and he was to follow up in one month. (ECF No. 14-2 at 30.) Thyroid labs were ordered on December 31, 2021, and again on January 11, 2022. (ECF No. 14-2 at 29.) It was noted that Plaintiff refused his thyroid ultrasound on January 26, 2022. (ECF No. 14-2 at 32.) Plaintiff refused his thyroid labs on April 8, 2022. (ECF No. 14-2 at 17.) A note was made on May 11, 2022, to schedule a follow up with a provider to see why Plaintiff refused his thyroid ultrasound. (ECF No. 14-2 at 33.)

On June 9, 2022, APRN Hicks referred Plaintiff again for a thyroid ultrasound, noting that he could not be seen by endocrinology until this was completed. It was authorized. (ECF No. 14-2 at 4.)

Plaintiff had his thyroid ultrasound on July 18, 2022, which revealed a normal thyroid. (ECF No. 14-2 at 5.)

Plaintiff was seen on August 1, 2022, in the chronic care clinic for his hyperthyroidism. It was noted he was being transferred to NNCC or HDSP to see an endocrinologist. (ECF No. 14-2 at 47.)

On January 3, 2023, the endocrinology referral was discontinued, and Plaintiff was prescribed Levothyroxine as a keep-on-person (KOP) medication. (ECF No. 14-2 at 36.)

Double portions of food were renewed for 30 days on March 17, 2023, to prevent a decreased BMI. (ECF No. 14-2 at 40.)

Plaintiff's referral to an endocrinologist was discontinued after his thyroid ultrasound revealed a normal thyroid. Plaintiff is followed for his hyperthyroidism in the chronic care clinic, and has received lab testing, medications, ultrasounds, as well as double portions relative to his thyroid condition. He has not established a likelihood of success on his claim that Defendants have been deliberately indifferent with respect to referring him to a specialist for his thyroid. Nor has he established he will suffer irreparable harm in the absence of an order referring him to an endocrinologist. Therefore, his request for such relief should be denied.

**D. H. Pylori**

The June 29, 2021 record from Plaintiff's visit with APRN Martin indicates that his labs were positive for H. Pylori. His abdomen was soft and mildly distended and tender in the hypergastric region over the stomach, and he had increased acid reflux after meals with abdominal pain to the hypergastric region. (ECF No. 6 at 11.)

Plaintiff alleges in the amended complaint that APRN Martin told him on September 28, 2021, that the URP (Utilization Review Panel) approved an appointment with an outside gastroenterologist. The only evidence Plaintiff provides to support this allegation, is a copy of a blue Post-It note which has a list that includes "GI for H-Pylori." (ECF No. 19 at 17.) There is no evidence that this was in fact ordered by APRN Martin or anyone else. Nor is there a referral request on NDOC's form, nor an authorization or approval from NDOC's URP. Finally, even if there was a referral or authorization for Plaintiff to see a gastroenterologist, there is no evidence of the named defendants impeding Plaintiff's access to see a specialist.

The court finds Plaintiff has not demonstrated a likelihood of success on his claim that Defendants impeded his access to an appointment with a gastroenterologist concerning his H. Pylori, or that he will suffer irreparable harm in the absence of the requested relief. Therefore,

his request for injunctive relief should be denied insofar as this aspect of his Eighth Amendment claim is concerned. If Plaintiff continues to experience issues he believes are associated with H. Pylori, his remedy, at this time, is to kite medical to be seen and discuss these issues with his provider.

**E. Vitamins, Etc.**

In the amended complaint, Plaintiff alleges that Hicks refused to issue previously ordered probiotic drinks, dermatological cream and vitamins.

When Plaintiff transferred to ESP on May 20, 2020, and his medication list included acidophilus (a probiotic), Prilosec, vitamin D, and fish oil. (ECF No. 14-2 at 3.)

There is an order for vitamins C and D on December 28, 2021. (ECF No. 14-2 at 29.) On January 11, 2022, Plaintiff was ordered zinc, a topical cream, as well as Os-Cal. (ECF No. 14-2 at 29.) Plaintiff was ordered acidophilus again on January 19, 2022. (ECF No. 14-2 at 31.)

On August 1, 2022, Plaintiff submitted a kite asking that he be transferred to NNCC and that he be given the liquid probiotic drink and facial dermatology cream approved by the URP on September 28, 2021, but that he had not received. Plaintiff received a response that the provider would be consulted. (ECF No. 6 at 16.) On March 25, 2022, Plaintiff was ordered Os-Cal and vitamin D3. (ECF No. 14-2 at 33.) There is a notation on June 6, 2022, that non-formulary medications/vitamins would not be renewed. (ECF No. 14-2 at 30.)

A "NF" was placed for refill of alpha-lipoic acid on June 13, 2022. (ECF No. 14-2 at 33.) Lac-Hydrin was ordered topically as needed on August 17, 2022. (ECF No. 14-2 at 34.) He was ordered Capsaicin cream on September 19, 2022. (ECF No. 14-2 at 34.) He was ordered Lac-Hydrin again on November 29, 2022, and December 8, 2022. (ECF No. 14-2 at 34, 35.) The

alpha-lipoic acid was discontinued in early January of 2023, with a notation that there was no clinical indication. (ECF No. 14-2 at 36.)

First, the court finds Plaintiff has not demonstrated a likelihood of success on the merits insofar as he claims his Eighth Amendment rights were violated because he was allegedly denied certain vitamins, supplements, probiotics and creams. In his motion, he states that probiotic drinks, dermatology cream, and essential vitamins were ordered and not provided, without specifying when these items were ordered, why they were ordered, or who failed to provide them. Plaintiff broadly expands his requested relief in his reply brief, but again, he does not point out when these items were ordered, who ordered them and what for, and who did not provide them. Nor does Plaintiff ever provide evidence or explain how he will suffer irreparable harm if he does not receive these items. Finally, with respect to the alpha-lipoic acid, there is a medical record indicating it was discontinued as not clinically indicated. Plaintiff provides no evidence that this order was made in conscious disregard of a risk to his health.

For these reasons, Plaintiff's request for injunctive relief in this regard should also be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

**GRANTING** Plaintiff's motion to voluntarily withdraw ECF No. 3 (ECF No. 18) and **STRIKING** ECF No. 3, and **DENYING** his motions for injunctive relief (ECF Nos. 6, 7).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

    2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 4, 2023

_____
Craig S. Denney
United States Magistrate Judge